IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

WILLIE JOE FRAZIER,           )
                              )
        Petitioner,           )          CASE NO.  1:09cv-00016
                              )          JUDGE HAYNES
v.                            )
                              )
JAMES FORTNER, *et al.*,       )
                              )
        Respondent.           )

# M E M O R A N D U M

Petitioner, Willie Joe Frazier, filed this action under 28 U.S.C. § 2254 seeking to set aside

his state convictions[1] for armed robbery for which he received a life sentence.  After a review of the

petition,[2] the Court appointed the Federal Public Defender to represent Petitioner.  (Docket Entry

No. 10).  In an amended petition, Petitioner asserts the following claims: (1) that the evidence was

insufficient to support his conviction; (2) that the State sentenced him beyond the statutory

maximum sentence in violation of the Eighth Amendment to the United States Constitution; (3) the

State deprived him of due process under the Fifth and Fourteenth Amendments in sentencing him;

(4) that the Defendant's sentence violated the Ex Post Facto Clause of Article I Section 10 of the

Constitution and; (5) that Petitioner was denied effective assistance of counsel at his trial and direct

appeal.  (Docket Entry No. 16).  The specifics of Petitioner's sentencing claims are that before and

during Petitioner's trial, the state trial judge informed Petitioner that the maximum sentence for

---

[1] Petitioner was convicted of other offenses, but his habeas petition is limited to his sentence for his armed robbery convictions.

[2] The Federal Rules of Civil Procedure can apply in a habeas proceeding.  Mayle v. Felix, 545 U.S. 644, 649 (2005); Rule 6(a), Rules Governing Section 2254 Cases. Under Fed. R. Civ. P. 15 (a), the filing of an amended complaint supersedes the prior complaint.  Clark v. Tarrant County, 798 F.2d 736, 740-41 (5th Cir. 1986).  Thus, the Court deems the second amended petition to supersede the pro se petition. The Court will address only those claims that are briefed.

1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### COLUMBIA DIVISION

WILLIE JOE FRAZIER,   )
         )
  Petitioner,    )    CASE NO.  1:09cv-00016
         )    JUDGE HAYNES
v.         )
         )
JAMES FORTNER, *et al.*,  )
         )
  Respondent.   )

## M E M O R A N D U M

Petitioner, Willie Joe Frazier, filed this action under 28 U.S.C. § 2254 seeking to set aside

his state convictions[1] for armed robbery for which he received a life sentence.  After a review of the

petition,[2] the Court appointed the Federal Public Defender to represent Petitioner.  (Docket Entry

No. 10).  In an amended petition, Petitioner asserts the following claims: (1) that the evidence was

insufficient to support his conviction; (2) that the State sentenced him beyond the statutory

maximum sentence in violation of the Eighth Amendment to the United States Constitution; (3) the

State deprived him of due process under the Fifth and Fourteenth Amendments in sentencing him;

(4) that the Defendant's sentence violated the Ex Post Facto Clause of Article I Section 10 of the

Constitution and; (5) that Petitioner was denied effective assistance of counsel at his trial and direct

appeal.  (Docket Entry No. 16).  The specifics of Petitioner's sentencing claims are that before and

during Petitioner's trial, the state trial judge informed Petitioner that the maximum sentence for

---

[1] Petitioner was convicted of other offenses, but his habeas petition is limited to his sentence for his armed robbery convictions.

[2] The Federal Rules of Civil Procedure can apply in a habeas proceeding.  Mayle v. Felix, 545 U.S. 644, 649 (2005); Rule 6(a), Rules Governing Section 2254 Cases. Under Fed. R. Civ. P. 15 (a), the filing of an amended complaint supersedes the prior complaint.  Clark v. Tarrant County, 798 F.2d 736, 740-41 (5th Cir. 1986).  Thus, the Court deems the second amended petition to supersede the pro se petition. The Court will address only those claims briefed on the amended petition.

*[handwritten: 1 not due ]*

armed robbery was 8-12 years, but after conviction, the jury sentenced Petitioner to life in prison. Petitioner also contends that he was denied notice of the true nature of the sentence to which he was subjected.

Before the Court is the Petitioner's motion for summary judgment on his sentencing claims (Docket Entry No. 25) contending that the undisputed historical facts establish his entitlement to habeas relief. In his response, the Respondent argues, in sum: (1) that Petitioner's sentencing claims in this action were not fairly presented to the state courts; (2) that Petitioner cannot establish cause and prejudice for his procedural defaults on those claims; (3) that Petitioner's sentencing claims are based upon state laws that are not grounds for habeas relief; and (4) that Petitioner lacks clearly established Supreme Court precedent for the sentencing claims that is also necessary for habeas relief. The parties have briefed Petitioner's other claims. (Docket Entry Nos. 16 at 10-16 and Docket Entry No. 22, 3-12). The Court addresses all of Petitioner's claims that are briefed and argued.

## A. Procedural History

On November 5, 1980, Petitioner was indicted inter alia for the armed robbery of the H & S Pharmacy in Lewisberg, Tennessee on the morning of October 11, 1980. Pending his trial, Petitioner escaped and lived without incident in the Pacific Northwest for twenty years. After a September 2002 traffic stop in Washington for a cracked windshield, a background check of Petitioner's driver's license led to his arrest and return to Marshall County, Tennessee to stand trial.

After his trial in May 2003, a jury convicted Petitioner of assault with intent to commit first-degree murder, two counts of malicious shooting, assault with intent to commit voluntary

2

manslaughter, three counts of aggravated assault, and six counts of armed robbery.[3]  State v. Frazier, No. M2003-03014-CCA-R3-CD, 2005 WL 179884 (Tenn. Crim. App. July 26, 2005) (perm app. denied December 19, 2005).  Petitioner's sentence was life imprisonment for each of the six convictions of armed robbery, 10 years for the assault with intent to commit first degree murder and 4 years for each of the malicious shooting convictions.  Petitioner received consecutive sentences for an effective sentence of life imprisonment plus 18 years.  On direct appeal, the Tennessee Court of Criminal Appeals affirmed Petitioner's conviction and sentence, except as noted below and the Tennessee Supreme Court denied review.  Id.

On March 17, 2006, Petitioner filed a state petition for post-conviction relief for which he was appointed counsel.  After an evidentiary hearing, the state trial court denied the petition and on appeal, the Tennessee Court of Criminal Appeals affirmed.  Frazier v. State, No. M2006-02265-CCA-R3-PC, 2008 WL 1732971 (Tenn. Crim. App. April 15, 2008) perm. app. denied October 27, 2008.  The Tennessee Supreme Court denied review.  Id.

Petitioner next filed a state petition for writ of habeas corpus, contending his sentences were illegal and void because he was not sentenced under the Sentencing Reform Act of 1989.  Frazier v. State, No. M2007-00525-CCA-R3-CO, 2008 WL 4072174 (Tenn. Crim. App. September 3, 2008).  The state trial court dismissed the petition without hearing and the Tennessee Court of Criminal Appeals affirmed.  Id.  Petitioner did not seek discretionary review in the Tennessee Supreme Court.

**B.  Review of the State Record**

---

[3] At trial, Petitioner was convicted of two counts of assault with intent to commit robbery, but the Tennessee Court of Criminal Appeals deemed the evidence insufficient to sustain those convictions and remanded the action for entry of judgments of conviction for aggravated assaults, the lesser included offense.

3

In his direct appeal, the Tennessee Court of Criminal Appeals set forth the following facts,[4] giving rise to Petitioner's convictions.

The evidence at trial established that on October 11, 1980, the [petitioner], along with Jerry Fails and Diane Grooms, entered H & S Pharmacy in Lewisburg soon after the store's 8:00 a.m. opening. Fails was armed with a 16-gauge pump shotgun, and the [petitioner] carried a pistol. The trio herded store clerk Ann Worley, seventeen-year-old employee Richard Tate, pharmacist Sam Shelton, bookkeeper Judy Pigg, and eighty-one-year-old deliveryman Ollie Bagley, along with customers, Jackie Lowe, Dorothy Collins, Goldie Crabtree, Billy Pugh, and Pugh's grandniece at gunpoint to a small office at the back of the store. After escorting the victims to the office, Fails announced that everyone would be shot. Later Fails apparently reconsidered and told the victims that they would be tied up. However, when the assailants ran out of rope, the victims were again informed that they would be shot. Fortunately, additional bindings were found. At trial, Worley, Tate, Pigg, Pugh, and Collins testified that after being ordered to lie on the floor, their jewelry and wallets were taken. The [petitioner] told Worley that if she didn't take her rings off, he would cut off her fingers. Bagley was kicked to the floor and "stomped" in the head. Lowe testified that no money was taken from her person. When Pugh's eighteen-month-old grandniece began to cry, Fails directed the [petitioner] to kill the child, but the [petitioner] refused. While Fails and Grooms were in the pharmacy area of the store stealing narcotics and a bank deposit bag containing money, the [petitioner] remained in the office with the victims.

Richard and Judy Watson arrived at H & S Pharmacy while the robbery was still in progress. Mr. Watson left his wife in the car while he went inside the store to purchase a birthday card. As Mr. Watson was reading cards, Fails approached and pointed a gun at him. Fails then ordered Watson to "come here," and, upon compliance, Fails placed the gun barrel next to Watson's left thigh and pulled the trigger. The shotgun injury required amputation of the leg. Grooms told the [petitioner] and Fails, "[Watson] has a wife or a girlfriend in the car," and one of the men responded, "we have got to get her in here." In the meantime, Mrs. Watson, tired of waiting for her husband, decided to go inside the pharmacy to investigate his delay. As she stepped out of her vehicle, Mrs. Watson saw the [petitioner] and Grooms carrying a large box from the store. Grooms looked back in the store, smiling and waving, and said, "see you later." As Mrs. Watson entered the store and walked toward the card section, Fails pointed a shotgun at her and said, "I got your God damn husband, and you are going to be next, you white bitch." After she saw her husband lying in a pool of blood, she was pulled past the office and into the

---

[4] State appellate court opinion findings can constitute factual findings in a habeas action. <u>Sumner v. Mata</u>, 449 U.S. 539, 546-47 (1981) and have a statutory presumption of correctness. 28 U.S.C. § 2254(e).

Case 1:09-cv-00016 Document 28 Filed 09/21/11 Page 5 of 16 PageID #: 2104

storage area where Fails told her to lie down and then proceeded to shoot her in the right leg. The trio then fled in Grooms' automobile.

Jackie Green, a deputy sheriff with the Marshall County Sheriff's Department, was on routine patrol in a vehicle unequipped with a police radio when he noticed an older model, dark green Buick with Alabama tags speeding down West Commerce. The car eventually pulled over on the shoulder of the road, and Green pulled behind it. Fails, who was in the passenger seat of the car, exited the vehicle and fired two shots at Green, shattering his windshield. Fails then got back in the car, and sped away. Unable to radio for backup, Green stopped at a gas station and called the sheriff's department. Grooms' abandoned vehicle was found several miles away. Soon thereafter, detectives with the Lewisburg Police Department found the [petitioner] hitchhiking a short distance from the abandoned vehicle. His accomplices were arrested the next day.

While awaiting trial in the spring of 1981, the [petitioner] escaped from the Marshall County Jail. In September 2002, the [petitioner] was stopped by a Vancouver, Washington police officer for a cracked windshield. A routine computer check of the [petitioner's] driver's license ultimately led to his arrest and return to Marshall County, Tennessee.

Frazier, 2008 WL 1732971 at **1, 2. The Tennessee appellate court's other factual findings are set forth in the context of Petitioner's claim.

## C. Conclusions of Law

Petitioner's habeas petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Lindh v. Murphy, 521 U.S. 320, 336 (1997). Under the AEDPA, federal courts may not grant habeas relief for claims adjudicated on their merits in a state court proceeding, unless that state court proceeding:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

5

In Williams v. Taylor, 529 U.S. 362, 413 (2000), the Supreme Court stated that a state court judgment is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court on a set of materially indistinguishable facts." The Supreme Court interpreted the language "clearly established Federal law, as determined by the Supreme Court of the United States" as referring to "holdings, as opposed to dicta" of its decisions "as of the time of the relevant state-court decision." Id. at 412. In Bell v. Cone, 535 U.S. 685, 693 (2002), the Court reiterated that AEDPA modified a federal court's role in reviewing state prisoner applications "in order to prevent federal habeas 'retrials' and to ensure that state court convictions are given effect to the extent possible under the law."

Under the "unreasonable application" clause, a state court judgment results in an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. The Supreme Court explained that a state court's application of clearly established federal law must be "objectively unreasonable," and a federal habeas court may not grant habeas relief "simply because that court concludes in its independent judgment that the relevant decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A state court's application of federal law is unreasonable and habeas relief may be granted if the "state court decision is so clearly incorrect that it would not be debatable among reasonable jurists." Herbert v. Billy, 160 F.3d 1131, 1135 (6th Cir. 1998) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996)).

In reaching this decision, the Supreme Court reiterated that the claims were to be decided on the record before the state court. Holland v. Jackson, 542 U.S. 649, 652 (2004) (emphasis added).

6

The district court also "must presume that all determinations of factual issues made by the state court are correct unless the Defendant can rebut that presumption by clear and convincing evidence." Mitchell v. Mason, 325 F.3d 732, 738 (6th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1)). This presumption includes credibility findings of the state courts. Skaggs v. Parker, 235 F.3d 261, 266 (6th Cir. 2001).

## 1. Sentencing Claims

In essence, Petitioner's sentencing claims are that the State sentenced him under sentencing laws in place at the time of his offenses rather than the law at the time of his sentencing. The latter state laws were more favorable to Petitioner. Yet, Petitioner concedes that he did not assert these claims in the state courts. In his state habeas petition, Petitioner cited state law rather than claims under Due Process Clause of the Fourteenth Amendment or under the Eighth Amendment or cruel and unusual punishment provisions. See Frazier, 2008 WL 4072174 a *3.

Yet, Petitioner cites his counsel's oral motion at the state post-conviction evidentiary hearing to amend his petition to assert a due process claim under the Fourteenth Amendments for his sentencing on his armed robbery convictions. (Docket Entry No. 23-2, Transcript at 182, 185). The trial court denied the motion and the Tennessee appellate court affirmed that denial. Frazier, 2008 WL 1732971 at 7. In his state appellate brief, Petitioner cited the ex post facto clause of the "Federal" government contending that his sentence should have been the law in effect at the time of his offenses, not trial. (Docket Entry No. 23-2 at 8, 9).

In its opinion, the Tennessee Court of Criminal Appeals made factual findings about Petitioner's awareness of his possible sentence. As the Tennessee appellate court found:

> . . . The amended petition also claimed that the trial court violated the petitioner's right to avoid ex post facto prosecution by applying the incorrect sentencing law, that the life sentences were cruel and unusual punishment, and that the petitioner should have been sentenced as a Range I offender on the armed robbery convictions.

7

The post-conviction court conducted an evidentiary hearing on October 6, 2006.

In the hearing, the petitioner testified that, despite his request of trial counsel, counsel did not raise the issue of the "charging instrument" not being "properly preserved for prosecution." He testified that, during his absence while on escape, the State ceased reissuing his arrest warrants in 1990. On cross-examination, the petitioner admitted, however, that he was indicted on the various charges in his case on November 5, 1980, prior to his escape from jail in July 1981.

$$* \quad * \quad *$$

**The petitioner testified that, beginning with his initial appearance in the trial court, counsel informed him that he could not be sentenced to life imprisonment or to a term of 99 years, even though the petitioner believed that co-defendants Fails and Grooms had received 99 years and life, respectively**. He testified that counsel failed to adequately or accurately inform him of his liability for punishment. He testified that after he complained to the Board of Professional Responsibility, counsel wrote him and outlined the applicable sentencing ranges he was facing. Because, in reliance upon the letter, he believed he would be classified as a Range I offender with a 30 percent release eligibility, he rejected the State's plea offer of 75 years at 100 percent. The petitioner testified that he believed the Range I classification would govern the charges of armed robbery and that he would be subject to a sentencing range from eight to 12 years on each of those charges. He testified that he did not understand that the jury would fix the punishment or that he faced more severe punishment, including life sentencing, until the trial judge informed him after the jury returned guilty verdicts and the court had embarked upon a jury-sentencing hearing. The petitioner testified that "it was a shock to me" and that "[m]y lawyer was as surprised as I was." He testified that he would have "settled the case" had he known about jury sentencing and the potential for life sentences.

$$* \quad * \quad *$$

The petitioner testified that, at the time of his trial, he did not understand ex post facto principles as applied to his case.

$$* \quad * \quad *$$

**Trial counsel testified that, prior to trial, she realized that the 1980 sentencing law could apply, as could either the 1982 law or the 1989 law. She testified that, four to six months before trial, she ultimately determined that, because of the 1989 savings statute, Tennessee Code Annotated section 40-35-117, the 1980 law would apply .FN1 She testified that she informed the petitioner that she believed the 1980 law would mandate jury sentencing and that life sentences for armed robbery could be imposed. Counsel testified that, initially, the trial judge disagreed that the l980 law would apply and espoused comparative sentencing**

8

**pursuant to the l982 and l989 sentencing provisions with the least severe
sentence prevailing. The petitioner wanted counsel to accede to this
determination, and counsel complied with the petitioner's wish in this respect.
Ultimately, however, the trial judge changed his mind and opted to apply the
1980 law**.

> FN1. Tennessee Code Annotated section 40-35-227(c) provides, "For
> all persons who committed crimes prior to July 1, 1982, prior law
> shall apply and remain in full force and effect in every respect,
> including, but not limited to, sentencing, parole and probation."

**Trial counsel testified that the State never actually made a formal plea offer.
She recalled that, pursuant to the petitioner's request, she submitted a proposal
that yielded an effective sentence of 8 to 10 years at 30 percent and that the
State promptly rejected it. She testified that the State wanted something along
the lines of 20 to 24 years in "actual service time." The petitioner rejected any
possibility of pursuing a plea along these lines, although he agreed to submit an
offer of 15 years at 30 percent, which the State also rejected. The petitioner
expressed his belief that he would be acquitted of some of the charges. Counsel
testified that, prior to trial, she explained the 1980 law to the petitioner and told
him that he was gambling with life sentences by proceeding to trial**.

Counsel testified that, between trial and sentencing, and with the knowledge that life
sentences were in the offing, the petitioner authorized a plea proposal of 30 years at
30 percent, but the State was resolute about actual time served being in the range of
24 years. **She testified that, even after the trial judge had determined to apply
the l980 law, "Mr. Frazier still refused to make any kind of an offer that would
even come close to what we thought the State was going to settle it on."**

**Counsel recalled that she had researched the 1980 provision for life sentencing
for armed robbery and had found cases that indicated that such punishment
was not cruel or unusual**.

<u>Frazier</u>, 2008 WL 4072174 at **   (emphasis added).

In his state habeas action, the Tennessee appellate court rejected Petitioner's *ex post facto*

claim that he should have been sentenced under the 1989 Sentencing Act and that his sentence

violated <u>Blakely v. Washington</u>, 542 U.S. 296 (2004).

> Both the 1982 and the 1989 sentencing laws provide that crimes committed before
> July 1, 1982, are punishable by the applicable pre-July 1, 1982 sentencing law. See
> T.C.A. § 40-35-112(a) (repealed 1989); T.C.A. § 40-35-117(c); see also T.C.A. § 40-
> 35-117, Sentencing Comm'n Comments (offenses committed prior to July 1, 1982
> "were treated under the very different indeterminate jury sentencing structure").

9

Furthermore, this court has held that crimes committed prior to July 1, 1982, are exclusively punished via jury sentencing under the applicable prior law. State v. Turner, 919 S.W.2d 346, 361 (Tenn.Crim.App.1995); State v. Harris, 678 S.W.2d 473, 476 (Tenn.Crim.App.1984); State v. Carter, 669 S.W.2d 707, 708 (Tenn.Crim.App.1984).

Petitioner committed the offenses of armed robbery in 1980. Tennessee Code Annotated section 40-35-117(c) states, "For all persons who committed crimes prior to July 1, 1982, prior law shall apply and remain in full force and effect in every respect, including, but not limited to, sentencing, parole and probation." Petitioner's judgments of conviction for armed robbery show that Petitioner was tried and sentenced under the law as it existed in 1980. Moreover, Petitioner's sentences were authorized by the statutory sentencing provisions applicable for crimes committed in 1980. See T.C.A. § 39-3901 (repealed 1989). Thus, we conclude that Petitioner's sentences for his armed robbery convictions are not facially invalid, and Petitioner has failed to establish that he is entitled to habeas corpus relief on this ground.

Alternatively, Petitioner appears to argue that the enactment of Tennessee Code Annotated section 40-35-117(c), which replaced former section 39-114, was a violation of the Ex Post Facto Clause. In general, the Ex Post Facto Clauses bars the application of laws, rules, or policies that change the punishment and inflict greater punishment than the law annexed to the crime when it was committed. Johnson v. United States, 529 U.S. 694, 699, 120 S.Ct. 1795, 1800, 146 L.Ed.2d 727 (2000). However, because Petitioner was not sentenced pursuant to provisions enacted after he committed the offenses, there are no ex post facto concerns. See State v. Ricci, 914 S.W.2d 475, 480 (Tenn.1996). Petitioner was properly sentenced under the version of the Sentencing Act in effect at the time of his crime.

We note that on appeal, Petitioner has also argued additional grounds for habeas corpus relief which were not presented to the habeas court, including alleged Blakely violations and sentencing deficiencies. See Blakely v. Washington, 542 U.S. 296, 303, 124 S.Ct. 2531, 2537) (prohibiting the enhancement of a sentence based upon considerations that have neither been admitted by a defendant nor determined by a jury beyond a reasonable doubt). Issues that were not presented to the habeas court will not be considered for the first time on appeal. See Turner, 919 S.W.2d at 356 (observing that issues not raised or litigated in the trial court are waived). Therefore, these issues are deemed waived.

2008 WL 4072174 at **3-4.

Petitioner argues that the Tennessee Sentencing Acts of 1982 and 1989, Tenn. Code Ann. § 40-35-101 et seq. abolished jury sentencing, but the savings clause in each act provided that "For all persons who committed crimes prior to July 1, 1982, prior law shall apply and remain in full force

10

and effect in every respect, including, but not limited to, sentencing, parole and probation." Tennessee Code Annotated section 40-35-227(c).

Under the Ex Post Facto clause, Petitioner must show that the law at issue, was applied to "events occurring before its enactment," and that Petitioner was "disadvantaged by it." Lynce v. Mathis, 519 U.S. 433, 441 (1997). For an ex post facto violation, the state law must create a "sufficient risk of increasing the measure of punishment attached to the covered crimes." Garner v. Jones, 529 U.S. 244, 250 (2000) (citation and quotation marks omitted). In Hooks v. Sheets, 603 F.3d 316, 320-21 (6th Cir. 2010), the Sixth Circuit stated, as pertinent here, that "[t]he Ex Post Facto Clause prohibits a state from passing a law that . . . '"changes the punishment"' to inflict greater punishment than the law provided when the crime was committed.

As applied here, with the express savings clause in the 1982 and 1989 Sentencing Acts, the state courts could reasonably determine that Petitioner's ex post facto claim lacks merit. The Tennessee appellate court's findings reflect that before trial, Petitioner's counsel informed him that for armed robbery the sentence could be life imprisonment. These appellate court findings reflect that between trial and sentencing, Petitioner was aware of a possible life sentence, but elected not to reject his lawyer's advice and pursue a plea bargain for which the state prosecutors sought 24 years of actual imprisonment. Petitioner's co-defendants in these robberies were sentenced at 99 years and life. In these circumstances, the Court concludes that the Petitioner's state sentence did not violate the Ex Post Facto clause nor any due process rights of the Defendant under any clearly established Supreme Court precedents at the time of his sentencing.

## 2. Sufficiency of the Evidence Claim

11

For this claim, Petitioner contends that the evidence could not prove that Petitioner knew his co-defendant was going to shot Richard and Judy Watson or assisted in the shooting nor aid and abet in the Watson shooting nor in the shooting of Judy Watson.

Respondent contends that Petitioner did not assert these claims in his direct appeal. The Court agrees. This claim is procedurally defaulted and there is not any assertion of cause or prejudice for those defaults as discussed below. Coleman v. Thompson, 501 U.S. 722, 752 (1991); Pennsylvania v. Finley, 481 U.S. 551 (1987).

### 3. Ineffective Assistance of Counsel Claims

For these claims, Petitioner asserts his trial and appellate counsel failed to challenge the sufficiency of the evidence on the Watson shootings; that trial counsel failed to argue for the more lenient sentencing laws; and that trial counsel's advice on sentencing was ineffective. Respondent argues that none of these claims were presented in Petitioner's state post-conviction proceedings except for his sentencing related claims.

As to the claims about court's advice on sentencing citing federal law, the Tennessee appellate court ruled as follows:

> In the present case, the petitioner's appellate claim of ineffective assistance of counsel rests solely upon the allegation that counsel failed to adequately or properly advise the petitioner about the applicable sentencing law. He asserts in his brief that "defense counsel's advice should not have been determined by ... the trial court's [original] opinion ... on the proper sentencing scheme-but rather, what the law was." The petitioner does not claim that the trial court erred in ultimately applying the 1980 law.
>
> **Trial counsel's testimony, which was accredited by the post-conviction court, established that the defense team determined prior to trial that the 1980 law applied to the case and that counsel so informed the petitioner. Counsel also testified that, when the trial court expressed an intention to comparatively apply the 1982 and 1989 versions of the sentencing law, counsel told the petitioner that the trial court's view may not prevail; however, the petitioner liked the view espoused by the trial court and told counsel, in essence, not to "rock the boat." With the post-conviction court's accrediting counsel's**

12

**testimony, we cannot say that deficient performance was shown or, even if it had been shown, that the petitioner was prejudiced by the dispute about the applicable law. Based upon counsel's testimony, the petitioner was unwilling to consider any plea proposal near the range that the State consistently demanded, and moreover,** "[t]here is no right to plea bargain." State v. Gillespie, 898 S.W.2d 738, 740 (Tenn.Crim.App.1994); State v. Craig Stephen Bourne, No. 03C01-9807-CR-00237, slip op. at 8-9 (Tenn.Crim.App., Knoxville, Oct. 18, 1999).

Frasier, 2008 WL 1732971 at *6 (emphasis added).

To establish ineffective assistance of counsel, Petitioner must demonstrate that under the totality of the circumstances, his trial counsel performed deficiently and that counsel's performance resulted in prejudice. Strickland v. Washington, 466 U.S. 668, 695 (1984). As the Supreme Court has explained:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. 687.

As to the "performance" inquiry, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id. at 688. Under Strickland, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Id. at 691. As to the duty to investigate:

> These standards require no special amplification in order to define counsel's duty to investigate, the duty at issue in this case. As the Court of Appeals concluded, strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitation on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

13

The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decision, just as it may be critical to a proper assessment of counsel's other litigation decisions.

Id at 690-91.

In any event, Strickland directs that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "[i]n any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Id. at 689, 691. As the Supreme Court noted, "[c]ounsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information." Id. at 691 (emphasis added). Counsel's failure "to conduct constitutionally adequate pretrial investigation into potential evidence" can "hamper[] [their] ability to make strategic choices." Harries v. Bell, 417 F.3d 631, 639 (6th Cir. 2005). A court must examine not only to the individual errors of counsel, but must also view the effect of the errors cumulatively. See Draper v. Adams, 215 F.3d 1325, 2000WL712376 *3 (6th Cir. May 23, 2000).

To establish prejudice due to his counsel's errors or omissions, Petitioner must establish a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine

14

confidence in the outcome.  <u>Williams</u>, 529 U.S. at 390-91.  In a word, "[t]he result of a proceeding

can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel

cannot be shown by a preponderance of the evidence to have  determined the outcome." <u>Strickland</u>,

466 U.S. at 694.

Here, the Court concludes that the state courts could reasonably conclude that Petitioner's

trial counsel provided Petitioner accurate advice on state sentencing laws that Petitioner ignored.

Thus, appellate counsel's cited omissions could not establish prejudice under <u>Strickland</u>.  The Court

concludes that these claims lack merit.  The Court concludes that the state courts' decisions on these

claims are reasonable.

For these reasons, the Court concludes that Petitioner's motion for summary judgment

should be denied and this action be dismissed

An appropriate Order is filed herewith.

It is so **ORDERED**.

**ENTERED** this the ___ day of September, 2011.

WILLIAM J. HAYNES, JR.
United States District Judge

15